```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,                :
                                         :
        -against-                        :
                                         :         MEMORANDUM AND ORDER
LEON CAMPBELL,                           :              13-cr-419 (DLI)
        also known as "Country,"         :
                                         :           USMS No. 25952-050
                        Defendant.       :
------------------------------------------------------------x
```
**DORA L. IRIZARRY, United States District Judge:**

A grand jury within the Eastern District of New York indicted the defendant, Leon Campbell, on several charges relating to his alleged involvement in a marijuana distribution conspiracy. Campbell entered a plea of not guilty and remains in custody pending trial. However, the case cannot proceed to disposition because, based on reports of psychiatric examinations made of Campbell, the Court determined that Campbell is incompetent to stand trial. Medical authorities have informed the Court that his condition is treatable, but, to date, Campbell refuses to accept treatment.

The government moved under 18 U.S.C. § 4241(d) for an order directing that Campbell be forcibly medicated in order to restore his mental competence. Defense counsel does not oppose the application. For the reasons set forth below, the government's motion is granted.

I.    Background

On April 20, 2015, a grand jury within the Eastern District of New York returned a superseding indictment that charged Campbell with conspiracy to commit obstruction of justice murder, conspiracy to commit murder for hire, solicitation of murder, conspiracy to commit Hobbs Act robbery, and conspiracy to distribute marijuana. *See generally*, Superseding Indictment Dkt. Entry No. 141. In summary, the government alleges that Campbell engaged

1

with others in a marijuana distribution conspiracy and that, during the course of that conspiracy, he entered into an agreement with others to murder an individual believed to be a government informant. *Id.* Campbell also is accused of conspiring to rob narcotics and narcotics proceeds from others. *Id.*

On November 6, 2013, Campbell's defense attorney requested authorization to retain a forensic psychiatrist, Dr. Eric Goldsmith, to evaluate Campbell in connection with Campbell's competency to stand trial. Dkt. Entry No. 32. Dr. Goldsmith evaluated Campbell, and, on December 9, 2013, issued a report in which he concluded that Campbell was not competent to assist in his own defense or understand the nature and consequences of the charges against him (the "Dec. 9 Report," Dkt. Entry No. 38). Dr. Goldsmith opined that Campbell suffered from an "Unspecified Psychotic Disorder" characterized by "paranoid delusional thinking." *Id.* at 2.

On January 3, 2014, the government requested that another psychologist be permitted to examine Campbell. Dkt. Entry No. 49. The government's psychologist, Dr. Samantha DiMisa, Ph.D., evaluated Campbell on several occasions in February of 2014, and, on March 10, 2014, issued a report entitled "Competency to Stand Trial Evaluation (the "Mar. 10 Evaluation," Dkt. Entry No. 65). Dr. DiMisa similarly concluded that Campbell was incompetent to stand trial because he possessed neither a rational understanding of his case, nor the ability to assist in the preparation of his case. Mar. 10 Evaluation at 18. Dr. DiMisa also found that Campbell exhibited "paranoid delusional thinking," and offered a diagnosis of "Other Specified Schizophrenia Spectrum and Other Psychotic Disorder." *Id.* at 9. Dr. DiMisa's diagnosis also included: (i) Alcohol Use Disorder, Mild, In a Controlled Environment; (ii) Cannabis Use Disorder, Mild, In a Controlled Environment; (iii) Other Hallucinogen Use Disorder, Mild, In a Controlled Environment; and (iv) Adult Antisocial Behavior. *Id.*

On April 1, 2014, the Court held a competency hearing at which, *inter alia*, both the government and defense counsel moved to confirm the psychological reports issued by Drs. Goldsmith and DiMisa. *See* Minute Entry, dated April 1, 2014. Having reviewed the reports and on the parties' motion, the Court confirmed the reports. *Id.* By separate order issued on April 3, 2014, the Court directed that that the Bureau of Prisons ("BOP") hospitalize Campbell in a suitable facility, as defined in 18 U.S.C. § 4247(a)(2), for such reasonable period of time, not to exceed four months from the date of the order, as necessary for further evaluation and treatment for restoration of competency, and as necessary to determine whether there was a substantial probability that in the foreseeable future, he would attain the capacity to permit the proceedings to go forward (the "April 3 Order," Dkt. Entry No. 75). The Court further directed that three months from the date of the April 3 Order, if Campbell had not yet been restored to competency, a psychiatric and psychological report on the status of his progress be prepared with a recommendation or prognosis as to whether there was a substantial probability that, in the foreseeable future, he would attain the capacity to permit the proceedings to go forward. *Id.*

II.   The Competency Restoration Study

On June 5, 2014, Dr. Jill Grant, Psy.D, Forensic Psychologist, Dr. Robert Lucking, M.D., Staff Psychiatrist, and other medical, correctional, and mental health staff (collectively, the "Medical Staff") at the Federal Medical Center in Butner, North Carolina ("FMC Butner"), began a competency restoration study of Campbell (the "Study"). On November 13, 2014, a Forensic Evaluation summarizing the Study's findings was issued (the "Evaluation," Dkt. Entry No. 119).

As part of the Study, the Medical Staff reviewed, among other things, the reports prepared by Drs. Goldsmith and DeMisa. *Id.* at 2. The Study also included individual interviews

with Campbell, as well as psychological testing and observation of Campbell's behavior throughout his stay at FMC Butner. *Id.* The Evaluation summarized in detail the reports issued by Drs. Goldsmith and DeMisa, as well as the Medical Staff's own evaluations and observations of Campbell's behavior and responses to psychological testing. *Id.* at 2-14.

The Medical Staff concurred with the prior expert conclusions, opining that Campbell suffers from a "psychotic disorder," which includes "persecutory delusions." *Id.* at 14-15. The specific diagnosis offered in the Evaluation was substantially similar to Dr. DiMisa's diagnosis, to wit: (i) Unspecified Schizophrenia Spectrum and Other Psychotic Disorder; (ii) Alcohol Use Disorder, Mild, In a Controlled Environment; (iii) Cannabis Use Disorder, Mild, In a Controlled Environment; (iv) Other Hallucinogen Use Disorder, Mild, In a Controlled Environment; and (v) Antisocial Personality Traits. *Id.* at 14. Based on this diagnosis, the Medical Staff confirmed that Campbell remained not competent to stand trial. *Id.* at 15.

With respect to treatment, the Medical Staff stated that, in the "majority of individuals with a psychotic disorder, medication treatment is effective in diminishing, if not eliminating, symptoms such as persecutory delusions, auditory hallucinations, and mood disorder symptoms, all of which are present in this case." *Id.* at 16. According to the Evaluation, Campbell does not acknowledge his mental illness, and refuses medication. *Id*. Campbell does not meet the BOP's administrative guidelines for involuntary medication, because he does not pose a threat to himself, others, or the safe operation of the facility. *Id.* at 17. Moreover, Campbell "manages his personal hygiene without assistance, maintains adequate nutritional practices and status, and is not considered to be gravely disabled. . . ." *Id.* As a result, the BOP requested a judicial order permitting the BOP to forcibly medicate Campbell for the sole purpose of rendering him

competent to stand trial, finding that the circumstances here complied with standards set forth in *Sell v. United States*, 539 U.S. 166 (2003).[1]  *Id.*

III.   The Parties' Responses to the Evaluation

By order dated November 26, 2014, the Court directed the parties to inform the Court whether they would seek to controvert the conclusions of the Evaluation.  On that same date, defense counsel stated that he would not seek to controvert the Evaluation's conclusion that Campbell was incompetent to stand trial, but would seek to controvert the conclusion that efforts to restore Campbell to competence were appropriate pursuant to *Sell*.  Letter from Defense Counsel, dated November 26, 2014, Dkt. Entry No. 120.  Defense counsel further requested the appointment of a psychiatrist to examine the Evaluation's conclusions.  *Id.*  By order dated December 1, 2014, the Court granted the application for the appointment of a psychiatrist.

On December 10, 2014, the government filed a letter requesting that the Court issue an order permitting the BOP to forcibly medicate Campbell in an attempt to restore him to competence, as recommended by the Evaluation.  Dkt. Entry No. 124.  On April 28, 2015, defense counsel filed a letter with the Court stating that, based on Dr. Goldsmith's most recent evaluation of Campbell, defense counsel no longer was able to controvert the recommendation that Campbell be forcibly medicated in an effort to restore him to competence.  Dkt. Entry No. 144.  On May 4, 2015, defense counsel filed, under seal, the letter he received from Dr. Goldsmith summarizing his most recent evaluation of Campbell, as well as Dr. Goldsmith's opinion of the Evaluation's conclusions.  Dkt. Entry No. 146.

IV.   Discussion

Under *Sell*, involuntary administration of medication is permissible only when four conditions are satisfied.  539 U.S. at 180-183.  First, there must be important government

---

[1] The BOP's reasoning is set forth more fully in section IV below.

interests at stake, accounting for special circumstances that may lessen the importance of those interests. *Id.* at 180. Second, the treatment must significantly further those interests. *Id.* at 181. This means that the medication is substantially likely to return the defendant to competence and the side effects are substantially unlikely to interfere with the defendant's ability to assist counsel. *Id.* Third, the treatment must be necessary to further the important government interests, considering any less intrusive alternatives. Finally, the treatment must be medically appropriate. *Id.* at 182. The government must demonstrate each of these conditions by clear and convincing evidence. *United States v. Gomes*, 387 F.3d 157, 160 (2d Cir. 2004). However, before addressing the four *Sell* factors, courts must first consider whether there are alternative grounds for ordering that a defendant be forcibly medicated. 539 U.S. at 181.

    A. <u>Rendering Campbell Competent to Stand Trial<br>      Is the Only Interest Warranting Forced Medication</u>

Under *Sell*, as a threshold matter, the Court must determine whether rendering Campbell competent to stand trial is the only purpose for which forced medication may be warranted. *Sell*, 539 U.S. at 181. If there is some alternate ground for ordering the defendant forcibly medicated, such as that he is dangerous or his health is at risk, the Court must consider those grounds before addressing trial competency. *Id.* at 182 (citing *Washington v. Harper*, 494 U.S. 210, 221-222 (1990)). Here, the Evaluation states unambiguously that Campbell is not a danger to himself or others, and that he has no medical issues besides the psychotic disorder. Accordingly, the Court finds that rendering Campbell competent to stand trial is the only ground for which he may be forcibly medicated.

    B. <u>The Government's Interest in Trying Campbell is Important</u>

*Sell* established that the government's interest in trying an individual charged with a serious crime, whether against a person or property, is important. 539 U.S. at 180. In assessing

6

the seriousness of a defendant's alleged crimes, courts have looked to factors such as the applicable statutory minimum and maximum sentences, and the likely United States Sentencing Guidelines range. *United States v. Decoteau*, 857 F. Supp. 2d 295, 302 (E.D.N.Y. 2012) (finding a wire fraud scheme with a maximum sentence of 30 years to be a serious crime); *United States v. Bedros*, 2008 WL 2437865, *3 (E.D.N.Y. June 13, 2008) (finding unlawful entry into the United States after conviction for aggravated felony with a maximum sentence of 20 years to be a serious crime); *Gomes*, 387 F.3d at 160-161 (quoting *United States v. Gomes*, 289 F.3d 71 (2d Cir.2002) (finding felon in possession of a firearm, where defendant faced enhanced sentencing as an armed career criminal, to be a serious crime)).

However, even when a court finds the charged crime to be serious, *Sell* cautions that courts must consider whether "special circumstances" lessen the importance of the governmental interest in trying the defendant, and diminish the necessity of forced medication. 539 U.S. at 180; *Gomes*, 387 F.3d at 161. Examples of such special circumstances include the possibility of civil confinement, or a lengthy period of pre-trial confinement. 539 U.S. at 180.

Here, it is abundantly clear that Campbell is charged with several serious crimes, including conspiracy to commit a murder designed to obstruct justice. This crime alone carries a statutory maximum of 30 years' imprisonment. 18 U.S.C. § 1512(a)(3)(B)(i). With regard to special circumstances, Campbell appears to be an unlikely candidate for civil commitment, given the Evaluation's conclusion that he does not pose a danger to himself or others in prison. *See* Evaluation at 17; *see also Gomes*, 387 F.3d at 161 (finding prospect of civil commitment "relatively unlikely," because the evaluating doctors testified that he was not a danger in a prison setting). Although Campbell has been in custody for more than two-and-a-half years, this special circumstance does not vitiate sufficiently the overwhelmingly serious nature of these crimes, and

the government's concomitantly important interest in trying Campbell. Therefore, the first prong of *Sell* is satisfied easily.

### C. The Proposed Treatment Significantly Will Further the Important Interest

A proposed treatment significantly furthers an important government interest if the treatment (1) is "substantially likely" to restore the defendant to competence while (2) being "substantially unlikely" to cause side effects that will interfere significantly with the defendant's ability to assist in his defense. *Gomes*, 387 F.3d at 161 (citing *Sell*, 539 U.S. at 181). Although no controlling case law defines "substantially likely" with precision, the Second Circuit in *Gomes* found a 70% success rate in restoring competence through antipsychotic medication to be sufficient. *Id.* at 161-62. In one case from this district, the court found a substantial likelihood of competency restoration where the government's expert revised his prediction of success downward from 80% to 60%, and the government's expert further conceded that the probability of success could be even lower than 60% given the defendant's particular health problems. *Bedros*, 2008 WL 2437865, *3. In another case from this district, the court found the second *Sell* factor satisfied, based on the opinion of a government expert who had relied on a study indicating a 77% success rate. *Decoteau*, 857 F. Supp. 2d at 302.

Here, the government has offered the Medical Staff's expert opinion that antipsychotic medication is "substantially likely" to render Campbell competent to stand trial, noting that antipsychotic medication is effective in decreasing delusional beliefs. Evaluation at 18-19. According to the Evaluation, Campbell's delusional beliefs appear to be the primary obstacle to his competency to stand trial. *Id.*

In further support of the second *Sell* factor, the Medical Staff also summarized the findings of ten different studies concerning the rates at which individuals with a psychotic illness

can be returned to competency with antipsychotic medication. *Id.* at 19-22. While these studies varied across numerous factors such as sample size, methodology, and publication date, they generally were consistent in finding that a significant percentage of the individuals studied were returned to competency after receiving medication. *Id.* Based on their review of this literature, as well as their own experience, the Medical Staff found that "the rate of restoration [of individuals found not competent to stand trial as a result of a psychotic illness] is approximately 75% or greater. . . ." *Id.* The Medical Staff also noted that Campbell only possesses one of the fifteen different factors associated with poor outcomes with antipsychotic medication.[2] *Id.* at 19.

Concerning potential side effects, the Medical Staff advised that Campbell probably would be treated with a drug known as haloperidol through involuntary injection.[3] *Id.* at 24. Haloperidol is a first generation antipsychotic, the most prevalent side effects of which are neurological, and are known as extrapyramidal symptoms. *Id.* at 25. These symptoms appear in approximately 30% of cases, and can include oculogyric crisis (rolling back of the eyes and arching of the neck), and opisthotonus (arching of the body in the neck, jaw, back and tongue producing abnormal postures). *Id.* at 26. Although "frightening and painful," these side effects can be treated easily with anticholinergic medications. *Id.* Anticholinergic medications also have side effects, but the Medical Staff concludes that, because Campbell does not have any underlying medical conditions that would be adversely affected, the medication would not impair his ability to assist his attorney. *Id*. at 22.

---

[2] Two of the factors were not considered, because of insufficient information concerning those factors.

[3] Campbell's course of treatment, including the type of medication and method of administration, ultimately depends on whether he decides to take his medication voluntarily. The Medical Staff notes that sometimes, when faced with the prospect of involuntary injection, inmates will relent and agree to voluntarily receive medication orally. *Id.* at 33. In such cases, the inmate is given medication with less severe side effects than haloperidol. *Id.* However, as of this writing, Campbell refuses to receive medication voluntarily. *Id.* at 17. Accordingly, the Court must assume for the purposes of this Memorandum and Order that the Medical Staff will administer haloperidol by way of involuntary injection.

In summary, the Medical Staff relied on numerous studies, as well as their own experience, to conclude that the rate of restoration using antipsychotic medication is 75% or greater. Evaluation at 22. They also found that, given Campbell's particular medical profile, antipsychotic medication would be substantially unlikely to produce side effects that would interfere with his ability to assist his attorney in preparing a defense. The psychiatrist retained by defense counsel, Dr. Goldsmith, did not controvert either of these conclusions. Accordingly, the Court finds that the proposed course of treatment is substantially likely to restore Campbell to competence without impairing his ability to assist in his own defense, and thus, the second *Sell* factor is satisfied.

D. <u>No Alternative Treatment is Likely to Achieve Substantially the Same Result</u>

The third *Sell* prong asks whether treatment is necessary to further the important government interests, considering any less intrusive alternatives. In the Evaluation, the Medical Staff considered and explicitly rejected the suggestion that any potential alternative treatment would be viable to restore the defendant to competency. *Id.* at 22. For example, psychotherapy likely will be unsuccessful because Campbell does not believe he needs treatment and he refuses to cooperate with any treatment modalities. *Id.* Again, this conclusion is not challenged by the defendant's attorney or Dr. Goldsmith. The Court finds the Evaluation's finding on this issue to be convincing. Accordingly, the government has satisfied the third *Sell* prong.

E. <u>The Treatment is Medically Appropriate</u>

Finally, under the fourth *Sell* prong, the Court must determine whether the use of the antipsychotic medication is medically appropriate. The Medical Staff explained that "drug-drug" interactions and underlying medical illnesses are important considerations in assessing the fourth *Sell* factor. *Id.* at 23. Here, Campbell currently is not being treated with any medications that

would interact adversely with the proposed medications. *Id.* Similarly, the Medical Staff noted that he does not "have any underlying medical illness or conditions which would preclude or be worsened by the use of antipsychotic medication." *Id.* Although there is approximately a 30% chance that Campbell may experience extrapyramidal symptoms, he will be closely monitored for these, and any other side effects, and will be treated accordingly should they arise. In short, the Medical Staff provided a detailed and convincing explanation of the medical appropriateness of the proposed treatment, which the defendant's own expert does not controvert. Therefore, the Court finds that the government has satisfied the fourth *Sell* prong through clear and convincing evidence.

V.  Conclusion and Order

After considering the entire record, the Court finds the government has proven each of the *Sell* factors by clear and convincing evidence. Accordingly, the government's motion that Campbell be medicated involuntarily, if necessary, to restore his competence to stand trial, is granted. Therefore, it is hereby

ORDERED, pursuant to 18 U.S.C. § 4241(d)(2)(A), that Campbell remain in the custody of the Attorney General for treatment to restore him to competence to proceed to trial. It is further hereby

ORDERED that defendant may be involuntarily medicated to restore his competence if the defendant does not voluntarily accept medication, in accordance with the proposed treatment plan outlined in the Evaluation. It is further hereby

ORDERED that the BOP's medical staff may perform involuntary physical and laboratory assessments and monitoring that are clinically necessary, if defendant does not voluntarily submit to such assessments and monitoring. It is further hereby

ORDERED that the period of treatment shall be four months from its commencement, which may be extended upon Court approval. It is further hereby

ORDERED that the government is directed to file monthly progress reports with the Court during the treatment period, with the fourth report being filed at least two weeks before the end of the four-month period concurrently with any request to extend the period. It is further hereby

ORDERED that, if there is a change in relevant circumstances, including changes in Campbell's medical condition, defendant or the government may move at any time to amend this Order. It is further hereby

ORDERED that, if Campbell is restored to competence, the BOP must file a report with the Court discussing the results of the treatment, whether continued medication is necessary, either by force or voluntarily, how the medications will affect Campbell at trial, and how to monitor for effects of the treatment throughout trial. If, on the other hand, it is determined that the treatment has failed, the government must so advise the Court in writing and file a report assessing defendant's current mental and physical condition. It is further hereby

ORDERED that the United States Attorney for the Eastern District of New York, or his representative, is directed to serve a copy of this Order on the United States Marshal's Service for the Eastern District of New York and the BOP within five business days of the date of this Order.

Finally, leave is granted to file an interlocutory appeal within 14 days of the entry of this Order, which is stayed for that 14-day period pending possible appeal. *Sell*, 539 U.S. at 176 (holding forced medication orders are immediately appealable).

SO ORDERED.

Dated: Brooklyn, New York
December 23, 2015

/s/
Dora L. Irizarry
United States District Judge