UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
UNITED STATES OF AMERICA,

               -against-

LEON CAMPBELL,
      also known as "Country," and
RONALD WILLIAMS,
      also known as "Blackman,"
      "Jermaine," "Leon Gordon," and
      "Marcus Reese,"

                      Defendants.
----------------------------------------------------------------x

**MEMORANDUM & ORDER**
13-CR-419 (DLI)

**DORA L. IRIZARRY, Chief United States District Judge:**

On November 8, 2016, defendant Ronald Williams ("Williams") filed a pretrial motion seeking an order, pursuant to Federal Rule of Criminal Procedure 12.2(c)(1) and 18 U.S.C. § 4241, compelling his codefendant Leon Campbell ("Campbell") (hereinafter collectively, "Defendants") to undergo a criminal responsibility examination. *See* Mem. of Law in Supp. of Pretrial Mot. for a Crim. Resp. Exam. of Leon Campbell on Behalf of Def. Ronald Williams ("Williams Mot."), Dkt. Entry No. 245. Both the United States and Campbell oppose the request. *See* Ltr. in Opp. to Ronald Williams' Mot. ("Campbell Opp."), Dkt. Entry No. 250; Mem. of Law Opp'g Def. Ronald Williams' Mot. Req'g a Crim. Resp. Exam. of Leon Campbell ("Gov't Opp."), Dkt. Entry No. 251. The matter was fully submitted[1] upon the submission of Williams' reply papers. *See* Reply Mem. in Supp. of Pretrial Mot. for a Crim. Resp. Exam. of Leon Campbell on Behalf of Def. Ronald Williams ("Williams Reply"), Dkt. Entry No. 252.

For the reasons set forth below, Williams' motion is denied.

---

[1] Although it was not requested, given the rights and issues presented by Williams' motion, the Court granted Campbell leave to file a sur-reply on or before December 21, 2016. Campbell declined to do so.

# DISCUSSION[2]

Williams' motion stems from four charges in the Superseding Indictment that allege Defendants participated in: (1) a conspiracy to distribute marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C); (2) a conspiracy to commit obstruction of justice murder, in violation of 18 U.S.C. §§ 1512(k) and 1512(a)(3)(B)(i); (3) a conspiracy to commit murder-for-hire, in violation of 18 U.S.C. § 1958(a); and (4) a conspiracy to commit a Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a). *See* Superseding Ind., Dkt. Entry No. 141 at ¶¶ 1-3, 7. The Supreme Court "has repeatedly said that the essence of a conspiracy is an agreement to commit an unlawful act." *United States v. Jimenez Recio*, 537 U.S. 270, 274 (2003) (internal citations and quotation marks omitted). Conspiracies are crimes of specific intent and, as such, a conviction requires that "the [G]overnment establish[] beyond a reasonable doubt that the defendant had the *specific intent* to violate the substantive statute," and form an agreement with at least one other person to do so. *United States v. Hassan*, 578 F.3d 108, 123 (2d Cir. 2008) (citing *United States v. DiTommaso*, 817 U.S. 201, 218 (2d Cir. 1987)) (emphasis in original).

Williams claims that the proposed examination is crucial to his defense against the four conspiracy charges because, if he could establish that Campbell lacked the mental capacity to enter into agreements at the times of the alleged offenses, no conspiracies would exist.[3] Williams Mot.

---

[2] The Court assumes the parties' familiarity with the facts and circumstances of the underlying case, as outlined in its previous decisions. *See* Dec. 23, 2015 Mem. & Order (Mot. for Forcible Med.), Dkt. Entry No. 199; Aug. 11, 2016 Mem. & Order (Mot. to Supp. Wiretap Evidence), Dkt. Entry No. 235; Aug. 30, 2016 Mem. & Order (Mot. for Sequestered Jury), Dkt. Entry No. 237.

[3] This argument ignores the fact that the Superseding Indictment specifically charges that Defendants participated in these conspiracies with other unidentified coconspirators. *See* Superseding Indict. at ¶¶ 1-3, 7. With this in mind, even if the Court were inclined to grant Williams' request, he does not explain how compelling Campbell's examination would defeat the conspiracy charges against him. Moreover, as the Government noted at the August 11, 2016 conference (see n.4, *infra*), evidence of these offenses includes the testimony of cooperating witnesses and taped conversations between Williams and Campbell intercepted pursuant to the execution of Court-ordered wiretaps.

at 6. Williams asserts that "[t]he only question . . . is whether this Court may order" Campbell to undergo a criminal responsibility examination, against his will and his counsel's advice, so that Williams may advance his defense. *Id*. at 3-5. The Court finds that, under the circumstances of this case, it may not enter such an order.

I. **STATUTORY AUTHORITY**

Williams' arguments derive from the Federal Rules of Criminal Procedure and associated statutes. Although Williams readily acknowledges that no precedent exists to support his argument, he asserts that Federal Rule of Criminal Procedure 12.2(c)(1) and 18 U.S.C. §§ 4241 ("§ 4241"), 4242 ("§4242") grant courts, in spirit, if not in practice, the authority to compel any defendant to undergo a criminal responsibility examination against his or her will. *Id*. at 2-5. While these provisions "contemplate a defendant filing notice of a psychiatric defense, and the court ordering the defendant to be examined in conjunction with that defense, at the behest of the [G]overnment," Williams maintains that the Court should grant his application because he stands in a position equivalent to that of the Government in the contemplated scenario. *Id*. at 4. In opposition, the Government correctly notes that "no court has ever ordered a 4242 Exam under similar circumstances." Gov't Opp. at 3.

As an initial matter, Williams' motion is made solely pursuant to § 4241. Reliance on this statute is completely misplaced, as the Court previously noted at an oral argument on this motion.[4] That statute concerns the mental capacity to stand trial and undergo post-release proceedings. *See United States v. Bumagin*, 114 F. Supp.3d 52, 55-56 (E.D.N.Y. 2015); *United States v. Shenghur*,

---

[4] The Court previously advised Williams of this fact during the conference held on August 11, 2016. *See* Aug. 11, 2016 Status Conf. Tr. ("Aug. 11, 2016 Tr."), Dkt. Entry No. 259, at 11-14. Williams' counsel acknowledged the difference between the objectives of § 4241 and § 4242 at that appearance and repeated that concession in the instant moving papers. *Id*. at 13-14 ("Your Honor, you couldn't be more right . . . ."); Williams Mot. at 4 ("§ 4242 . . . deals with the question of competency at the time of the offense (as opposed to § 4241 which is competency at time of trial) . . . .").

3

734 F. Supp.2d 552, 553 (S.D.N.Y. 2010); *see also United States v. Hutchinson*, 253 F. App'x 883 (11th Cir. 2007) (results of tests performed to determine a defendant's competence to stand trial were inadmissible to negate that defendant's specific intent to enter into a conspiracy). For an examination of a defendant's cognitive abilities at the time of the alleged offense, the governing statute is 18 U.S.C. § 4242.

Assuming that Williams intended to move under the applicable statute, the language of the operative law and rule is clear and unambiguous: the examination pertains to a defendant challenging his or her *own* mental capacity at the time the offense was committed. The Court so noted this at the August 11, 2016 conference. *See* Aug. 11, 2016 Tr. at 17-18 (finding that § 4242 and Rule 12.2 clearly are intended to apply to the defendant raising the defense). In the interest of justice and due process, the Court nonetheless granted Williams the opportunity to analyze the issue and present his arguments by written motion. As discussed more fully below, the Court remains unpersuaded that § 4242 permits the examination of a codefendant, as requested by Williams, for the purpose of determining whether that codefendant had the ability to enter into a criminal conspiracy.

First, in order to invoke an examination under § 4242, Federal Rule of Criminal Procedure 12.2(c)(1)(B) provides:

> If the defendant provides notice under Rule 12.2(a), the court must, upon the government's motion, order the defendant to be examined under 18 U.S.C. § 4242.

Williams recognizes the applicability of Rule 12.2(c)(1)(B), as he asserts that his memorandum of law constitutes the "formal notice" required by Rule 12.2(a).[5] Williams Mot. at 2. Incorporating the condition precedent of proper notice under Rule 12.2, § 4242(a) states:

---

[5] Williams also takes the position that his memorandum of law represents the "formal notice" required by Rule 12.2(b)(1), which pertains to the introduction of expert evidence as to a mental condition. Williams Mot. at 2.

> Upon the filing of a notice, as provided in Rule 12.2 of the Federal Rules of Criminal Procedure, that the defendant intends to rely on the defense of insanity, the court, upon motion of the attorney for the Government, shall order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c).

These twin provisions lead the Court to a fundamental analysis of textual interpretation.

When analyzing a statute, the Court looks to "the statute's plain meaning, if it has one." *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000) (citing *United States v. Piervinanzi*, 23 F.3d 670, 677 (2d Cir. 1994)). With laws, the "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (internal citations omitted). Similarly, Federal Rule of Criminal Procedure 2 explains, in pertinent part, that those rules are "to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration . . . ."

Applying these principles, the language of both provisions is clear that "the defendant" to be examined is the same individual who gave notice under Rule 12.2. Indeed, Williams concedes this very point.[6] Williams Mot. at 2-3. Without any ambiguity in the rule or statute, as Williams notes, there is no reasonable debate about what those provisions actually "contemplate."

Finally, even if the Court were to assume that Williams moved under the proper statute and that § 4242 and Rule 12.2 do not clearly restrict compulsory examinations to the defendant

---

According to Williams, he gave this notice because "he intends to use the results of the criminal responsibility examination" he wants the Court to compel. *Id*. at 6. To reach that question, the Court must find the authority to compel the examination in the first place, which it does not do. Accordingly, the Court need not and does not address issues related to Rule 12.2(b).

[6] Further strengthening the Court's interpretation is the language of the Insanity Defense Reform Act of 1984 ("IDRA"), the statute that precipitated Rule 12.2. *United States v. Levin*, No. 12-CR-101 (KBF), 2016 WL 299031, at *8 (S.D.N.Y. Jan. 25, 2016). That statute also contemplates a single individual invoking the rule and being examined. *See* 18 U.S.C. § 17(a) ("It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, *the defendant*, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of *his* acts.") (emphases added).

providing notice, Williams' argument about vindicating "the purpose" of each provision would still fail. Under either Rule 12.2(c)(1)(B) or § 4242, the text is clear that, before a court may order the examination of a defendant, the *Government* must move for the examination. The Government has not done so.

While Williams acknowledges that the purpose of § 4242 and Rule 12.2 is to permit the Government to rebut a defendant's mental capacity defense, he maintains that "[t]he same logic applies in the scenario before the [C]ourt" because he and Campbell have become "adversaries." Williams Mot. at 4. The Court rejects this premise. It irrationally equates the Government's opportunity to rebut an expected insanity defense with Williams' desire to create one for his codefendant and against his codefendant's will. Giving the prosecution an opportunity to secure the examination of a defendant who intends to escape criminal liability by claiming he did not appreciate the import and impact of his actions is separate and distinct from giving Williams the ability to force his codefendant to undergo an examination against his will. Far from establishing any type of symmetry or parallelism, the comparison of Williams' position to that of the Government highlights the contrast of their goals and objectives.

In sum, the Court finds that Rule 12.2 and § 4242 are not ambiguous, contemplate only that the defendant asserting the defense would be the subject examined, and only grant the Court authority to compel an examination after the Government moves for one. As such, the Court lacks any authority, by rule or by statute, to grant the requested relief.

## II. CONSTITUTIONAL CONCERNS

Beyond statutes and rules, Williams' argument necessarily pits his constitutional right to present a defense against Campbell's Fifth and Sixth Amendment rights and asks the Court to violate the latter in favor of the former. In fact, Williams concedes that forcing Campbell to

6

cooperate through an examination would result in constitutional violations. *See* Williams Mot. at 10-11; Williams Reply at 2-5. He nonetheless argues that severing their trials would allow the Court to violate Campbell's constitutional rights and limit the damage thereafter.[7] The only question then is the extent of those "sanctioned" violations and whether the Court successfully could craft protections to eliminate any adverse impact on Campbell. While this path may seem expedient, even if the Court were to find that Rule 12.2 and § 4242 are ambiguous *and* that Williams could stand in place of the Government to make the appropriate motion, the Court cannot trample on Campbell's fundamental rights as Williams requests.

    a. *The Fifth Amendment Right Against Self-Incrimination*

Under the Fifth Amendment, "[n]o person shall . . . be compelled in any criminal case to be a witness against himself . . . ." U.S. CONST. amend. V. This right has become one of the most sacred in our society, compelling the Supreme Court to observe that "any compulsory discovery by extorting the party's oath . . . to convict him of a crime . . . is contrary to the principles of a free government. It is abhorrent to the instincts . . . of an American. It may suit the purposes of despotic power, but it cannot abide the pure atmosphere of political liberty and personal freedom." *Malloy v. Hogan*, 378 U.S. 1, 9 n.7 (1964) (quoting *Boyd v. United States*, 116 U.S. 616, 631-32 (1886)). Given its primacy, the right against self-incrimination has been interpreted to be "as broad as the mischief against which is seeks to guard." *Counselman v. Hitchcock*, 142 U.S. 547, 562 (1892); *see also United States v. Robinson*, 485 U.S. 25, 45 (1988) (internal citation omitted); *Estelle v. Smith*, 451 U.S. 454, 467-68 (1981) (internal citation omitted); *United States v. Sasson*, 334 F. Supp.2d 347, 360 (E.D.N.Y. 2004) (internal citation omitted). "The essence of this basic constitutional principle is 'the requirement that the State which proposes to convict *and punish* an

---

[7] The issue of severance on different grounds will be addressed at a later date.

individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.'" *Estelle*, 451 U.S. at 462 (quoting *Culombe v. Connecticut*, 367 U.S. 568, 581-82 (1961) (emphasis in original)). The right, itself, is personal and "adheres basically to the person, not to the information that may incriminate him." *Couch v. United States*, 409 U.S. 322, 328 (1973). *See also* 18 U.S.C. § 3481, relating to "Competency of Accused" ("In trial of all persons charged with the commission of offenses against the United States . . . , the person charged shall, at his own request, be a competent witness.").

There is no dispute between the parties that compelling Campbell to undergo a criminal responsibility examination implicates his Fifth Amendment right against self-incrimination. *See* Williams Mot. at 10-11; Gov't Opp. at 6-10; Williams Reply at 2-5, 8-10; Campbell Opp. This is unsurprising, as precedent establishes that, when an individual "initiates a defense of mental incapacity or disturbance, he makes a *limited waiver* of his Fifth Amendment rights that permits the Government to conduct an examination of the defendant as a rebuttal to the psychiatric defense." *United States v. Wilson*, 920 F. Supp.2d 287, 303 (E.D.N.Y. 2012) (internal citations and quotation marks omitted) (emphasis added); *see also United States v. Troya*, 733 F.3d 1125, 1138-39 (11th Cir. 2013) ("[T]he introduction by the defense of psychiatric testimony constitutes a waiver of the defendant's [F]ifth [A]mendment privilege in the same manner as would the defendant's election to testify at trial.") (internal citations and quotation marks omitted); *Battie v. Estelle*, 655 F.2d 692, 702 n.22 (5th Cir. 1981) ("By introducing psychiatric testimony obtained by the defense from a psychiatric examination of the defendant, the defense constructively puts the defendant himself on the stand . . . .").

The question presented here is whether Campbell's decision to invoke his Fifth Amendment right must bow to Williams' Sixth Amendment right to present a defense.

Despite Williams' insistence to the contrary, his right to present a defense does not usurp Campbell's right against self-incrimination. As the Second Circuit has explained, "Traditionally, the Sixth Amendment's Compulsory Process Clause gives the defendant the right to bring his witness to court and have the witness's non-privileged testimony heard, but does not carry with it the additional right to displace a proper claim of privilege, including the privilege against self-incrimination." *United States v. Turkish*, 623 F.2d 769, 773-74 (2d Cir. 1980) (internal citations omitted). That is to say, "[t]he right to present a defense . . . does not displace traditional privileges." *United States v. Wells Fargo Bank, N.A.*, 132 F. Supp.3d 558, 561 (S.D.N.Y. 2015) (quoting *United States v. Serrano*, 406 F.3d 1208, 1215 (10th Cir. 2005)); *see also United States v. Pablo*, 696 F.3d 1280, 1295 (10th Cir. 2012) (the privilege against self-incrimination may be invoked "even at the expense of the defendant's right to present a defense") (internal citation omitted); *United States v. Hernandez*, 962 F.2d 1152, 1161 (5th Cir. 1992) ("It is well settled that a defendant's Sixth Amendment right of compulsory process to obtain witnesses in his favor must yield to a witness's Fifth Amendment privilege against self-incrimination.") (internal citations omitted); *United States v. Carter*, Nos. 89-3073, 89-3074, 1990 WL 212547, at *4 (D.C. Cir. Dec. 24, 1990) ("While the [S]ixth [A]mendment grants an accused the right to compulsory process over witnesses, it does not encompass the right to compel a witness to waive a [F]ifth [A]mendment privilege.") (internal citations omitted); *United States v. Lugg*, 892 F.2d 101, 102-03 (D.C. Cir. 1989) (refusing to compel the testimony of convicted, but unsentenced, coconspirators after they invoked their Fifth Amendment right); *United States v. Hous. Found. of Am.*, 176 F.2d 665, 666 (3d Cir. 1949) (reversing judgment and ordering new trial because trial judge compelled codefendant to testify over objection).

In light of the foregoing, the Court rejects the premise that Williams' right to present a defense diminishes Campbell's right against self-incrimination in any way. Both men have constitutional rights that they may choose to waive or invoke, as they believe appropriate upon due consultation with their attorneys. However, the case law makes clear that those rights must be respected by the Court and by each defendant. While Williams possesses the autonomy to choose the defense he wishes to present at trial, that right does not stretch to the point where he can impose his will on his reluctant codefendant, thereby reducing or eradicating Campbell's independent, personal right against self-incrimination.

b. *The Sixth Amendment Right to Present a Defense*

Even assuming, *arguendo*, that the Court could set aside Campbell's right against self-incrimination in order to buttress Williams' defense, the next hurdle to overcome is Campbell's right to choose his own defense. The relief Williams seeks would require the Court to proceed as though Campbell himself had chosen to assert the affirmative defense of insanity, despite the fact that Campbell has indicated that he does not wish to do so. Moreover, counsel for Campbell has noted that he has advised his client against submitting to the mental examination Williams requests. The Court finds that the requested relief would violate Campbell's Sixth Amendment right to present a defense.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. CONST. amend. VI. In the jurisprudence conncerning the Sixth Amendment, the Supreme Court has explained that this right "does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Faretta v. California*, 422 U.S. 806, 819 (1975); *See also United States v. Plattner*, 330 F.2d 271, 274 (2d Cir. 1964) ("Implicit . . . is the right of the

10

accused personally to manage and conduct his own defense in a criminal case."). This right encompasses the decision of what defenses a particular defendant wishes to advance and other "fundamental trial decisions, such as the decision to plead to a lesser charge or to assert a plea of insanity." *Petrovich v. Leonardo*, 229 F.3d 384, 386-87 (2d Cir. 2000) (internal citations omitted); *see also United States v. Demeke*, No. 96-1413, 1998 WL 391051, at *2 (2d Cir. May 20, 1998) (internal citations omitted); *United States v. Marble*, 940 F.2d 1542, 1547 (D.C. Cir. 1991) (observing that the court could "no longer distinguish the decision *not to plead insanity* from other aspects of a defendant's right . . . to direct his own defense.") (emphasis added).

In the instant case, the Court must determine whether Williams' right to present his own defense should cause the Court to compel Campbell to accept a defense against his will.

The logic that would prevent the Court from forcing Campbell to undergo an evaluation in contravention of his Fifth Amendment right against self-incrimination applies here in connection with his Sixth Amendment right to present a defense. Neither Williams nor Campbell possess an unfettered right to present a defense. *See Jimenez v. Walker*, 458 F.3d 130, 146-47 (2d Cir. 2006); *Williams v. Lord*, 996 F.2d 1481, 1483 (2d Cir. 1993) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)). In this regard, while their rights are personal to themselves, they are parallel and coterminous. Each defendant may select his own defense theory, but neither may infringe upon the other's ability to make that choice for himself. *See United States v. Straker*, 800 F.3d 570, 619 n.18 (D.C. Cir. 2015) (internal citations omitted) (noting that codefendants cannot invoke each other's personal Fifth and Sixth Amendment rights); *United States v. Sabatino*, 943 F.2d 94, 96 n.1 (1st Cir. 1991) (citing *Gannett Co. v. DePasquale*, 443 U.S. 368, 380 (1979)) ("Sixth Amendment rights, however, are personal in nature and cannot be asserted vicariously, even by a co-conspirator . . . ."). With this in mind, the Court would be loath to deprive Campbell of his

fundamental right to present a defense simply because his decision could impact the success of Williams' own preferred theory.

## CONCLUSION

In light of the foregoing, Williams' motion to compel a criminal responsibility examination of Campbell for the purpose of ascertaining Campbell's mental capacity at the time of the alleged conspiracy offenses is denied in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
       July 6, 2017

/s/
DORA L. IRIZARRY
Chief Judge
